PROVIDENCE, R.I., March 20, 1902.
To the Honorable, the Senate of the State of Rhode Island and Providence Plantations:
We have received from your honors a resolution requesting our opinion upon the following question:
"Has the General Assembly the power to establish inferior courts, and to authorize the judges thereof, not being judges of the Supreme Court, to preside at jury trials and instruct the jury ?"
The only reason for doubting the power of the General Assembly to establish such courts, with full authority in the *Page 626 
judges to instruct the jury, is the provision of the constitution, article X, section 3, which says: "The judges of the Supreme Court shall, in all trials, instruct the jury in the law."
At first sight this seems to imply that a judge of the Supreme Court is required, in every trial, to instruct the jury in the law. We are aware that this has been a strong, if not a prevalent, impression, among members of the legislature and of the bar.
The rule of interpretation given by Blackstone is to consider the old law, the mischief, and the remedy. Following this rule, we think it apparent that the constitution does not mean that no one but a judge of the Supreme Court can instruct the jury in the law.
Prior to 1827 a jury settled both law and fact. Judges were simply presiding officers at a trial, for the purposes of order and regularity. The only questions of law which they decided were questions of the admissibility of evidence, and they did not always decide those. Questions of law were argued to the jury, and not to the court. In a pamphlet report of the trial of Albert S. Field, for murder, at the March term of the Supreme Court, 1826, reported by B.F. Hallett, Esq., it appears that passages from legal authorities were read to the jury by counsel on both sides, and the close of the report is:
"The jury having been put under the charge of an officer, without any intimation from the court as to the points of law, (no charge ever being given to a jury either in civil or criminal cases under the present judiciary system of Rhode Island;) retired, and in three hours came into court with a verdict ofnot guilty of murder, but guilty of involuntary manslaughter."
The counsel in this case were the Hon. Albert C. Greene, attorney-general, for the State, and Joseph L. Tillinghast and John Whipple, for the defendant; names prominent in the list of our distinguished men.
An extract from Mr. Whipple's address to the jury is of interest:
"By the usage of our State, the court is not bound to instruct you. On yourselves, and on yourselves alone you must *Page 627 
rely. Will you undertake to learn enough of an intricate science, from the few scanty fragments, which in the course of a few hours may be read from the books? Will you proceed upon these rules, and allow the life of one of your fellow-men to depend upon your understanding in a single day principles about which those often differ who have devoted their whole lives to their study? With the best opinion of your understandings, and with the most unsuspicious feelings in regard to your motives, let me tell you, that the little which you may pick up in this way, will be as likely to mislead as to help you. This is emphatically a case in which the language of poetry becomes the language of truth, that a little learning is indeed a dangerous thing."
Possibly moved by the force of this appeal, or by the anomaly of the verdict, the General Assembly, in the following January, amended the law relating to the supreme judicial court, by making it the duty of the court "to instruct the grand juries in the law relating to crimes and offences cognizable by said court, by giving them publicly in charge the opinion of the court thereon; and to instruct the petit jury in the law that may be applicable to each cause by them tried, by giving them publicly in charge, before they retire to consider of their verdict, the opinion of the court upon the law."
At that time the court sat in banc in jury trials.
Courts of Common Pleas were held in each county, with juries, but the amendment did not apply to them, so that, as the law then stood, only the supreme judicial court was required to instruct juries in the law. Up to 1827 the judges of both courts were chiefly, if not always, laymen, but since then the judges of the Supreme Court have been lawyers. The reason, therefore, for providing for instruction to the jury only in the supreme judicial court is plain; but it was entirely within the power of the General Assembly to make the same provision for the Court of Common Pleas, or to repeal the act relating to the supreme judicial court. In other words, it remained discretionary with the Assembly to extend or to annul the power of instructing the jury in the law down to the adoption of the constitution. *Page 628 
This same provision was then embodied in the constitution, so that it should be permanent and not discretionary. The old law was that juries were the judges of the law. The mischief was that, under such a system, the law was not only fluctuating, but inaptly applied. The remedy was that in the court of last resort, at least, the court should instruct the jury in the law. This clearly was not prohibitive of conferring the same power on other courts. On the contrary, it would have been consistent, rather than inconsistent, to do so. Putting the provision into the constitution was simply changing it from the statutory to the fundamental law; but that process did not make it any more prohibitive than it was before. As the General Assembly, before the constitution, had the power to extend the provision to other courts, so under the constitution it had the same power.
It may be asked, however, why then was the provision limited to judges of the Supreme Court, in the constitution?
Even in solemn instruments words are commonly used with reference to conditions then in mind. The existing law related to the Supreme Court sitting as a body. The framers of the constitution foresaw that jury trials might not always be held before the court as a whole, but they did not foresee that the time might come when the Supreme Court should not hold, but only review, jury trials. Hence, they made the change from the court to the judges, in regard to charging the jury, "in all the cases;" that is, evidently, all cases before that court. The purpose was to insure the giving of the law in the Supreme Court, and not to prevent any other court from having the same advantage, or to require judges of the Supreme Court to go into other courts in order to have juries instructed by the court.
Thus we think that the history of the provision shows that it was not intended to be prohibitive as to other courts; but an equally strong argument to this end is found in the constitution itself.
Section 1 of article X gives to the General Assembly power to establish inferior courts. Subject to the implied right of appeal to the Supreme Court, there is nothing in the article to *Page 629 
limit the independence of such courts, and nothing to imply that they are to be attachments to the Supreme Court, or that they must be courts without jury trials. Yet all this must be true, if none but judges of the Supreme Court can charge a jury. We cannot think that it was intended to limit the important power of creating inferior courts in so indirect a way.
It may be said that all the judges of the Court of Common Pleas, since the adoption of the constitution, were judges of the Supreme Court. This is true, but the fact is to be regarded as incidental, rather than constitutional.
In 1843 it was provided that a judge of the Supreme Court should be, ex officio, chief justice of the Court of Common Pleas. With only three judges in the Supreme Court it was convenient and economical to add one to the Supreme Court, thus enabling the judges to be interchangeable in cases of emergency. When other judges were needed it was easier to do it in the same way than to constitute new courts, and thus it came to be looked upon by many as the necessary way. We fail, however, to find any warrant for such a conclusion, either in the history of the provision or the terms of the constitution. The terms are fully met by holding them to be imperative, with regard to the Supreme Court, but not thereby prohibitive as to other courts. We think that the more liberal and not the more restrictive interpretation should be given to them.
We therefore answer the question put to us by your honors in the affirmative.
We may add that this conclusion is not a novelty. It was held by the late Chief Justice Durfee, to whose opinions, on such a subject, his knowledge of our local history, in addition to his high standing as a jurist, gives unequalled weight. It was also presented by the Hon. Charles E. Gorman, in a carefully prepared paper recently read by him before the Rhode Island Bar Association.
 JOHN H. STINESS, WM. W. DOUGLAS, PARDON E. TILLINGHAST, EDWARD C. DUBOIS, GEORGE A. WILBUR, JOHN T. BLODGETT. HORATIO ROGERS, *Page 630 
NOTE.
In further illustration of the foregoing opinion it may be added that the charter of the city of Providence, passed October, 1831, authorized the municipal court of the city to take up and empanel juries and receive verdicts. City charter, Sec. 6. This power continued down to Pub. Laws (1896) cap. 371, when the provision was stricken out, in an amendment to the charter. Meanwhile, until Pub. Laws cap. 867, Jan. 1881, appeals were taken from the police court to the municipal court, with trials by jury, when demanded, and it was the custom of the judge of the municipal court to charge the jury.
No question of the constitutionality of this procedure was certified ever raised.
In 1881, if a jury trial was claimed, the case was certified to the Court of Common Pleas; and in 1896 the power to empanel juries was abolished, as stated above.
J.H.S.
OPINION TO THE GOVERNOR.
Under the provisions of section 3, of article X, of the constitution of the State, the following opinion of the justices of the Supreme Court was delivered to the governor, June 14, 1902, in the matter of